Case for argument this morning is 15-5149 Alamo v. United States Case for argument this morning is 15-5149 Alamo v. United States Case for argument this morning is 15-5149 Alamo v. United States Case for argument this morning is 15-5149 Alamo v. United States Case for argument this morning is 15-5149 Alamo v. United States If you're not asking for over 8 hours a day, then you're not asking for the additional 16 hours in those shifts, right? Correct. We're not asking for overtime for all 16 hours for each shift. What we are asking for is for the hours over 80 in each pay period. The work entails either a 96-hour pay period regularly scheduled or a 120-hour pay period. We're asking for 16 hours of regularly scheduled overtime in the 96-hour pay periods and 40 hours of regularly scheduled overtime in the 120-hour pay periods. The regulations and the statutes, they allow standby duty premium pay to substitute or preclude entitlement to regularly scheduled overtime only for employees who are entitled to Title V overtime. Appellants are FLSA non-exempt employees, meaning their entitlement to overtime pay accrues from Title 29 or the FLSA, not Title V. So the preclusion, and the court gets this wrong, the trial court gets this wrong by stating that OPM's pay regulations also appropriately recognize Congress's intent for standby duty premium pay to compensate for regularly scheduled overtime hours spent largely in standby duty status. That would be correct for exempt employees. This is precisely the reason why appellants withdrew their claims as to the exempt FLSA. Can you tell us what you're referring to? Are you referring to 5 U.S.C. 5545 C.1? Correct. That is the statute that is referred to, and that statute provides that the receipt of standby duty premium pay can substitute for regularly scheduled overtime pay under that subpart, which is Title V. But if you read 5542 C. of the U.S. Code, you see that none of those overtime rules, none of that overtime entitlement that's created under Title V applies to employees who are entitled to FLSA overtime. And there's no dispute here that our employees, appellants, are entitled to FLSA overtime. In fact, this was an area that appellee initially argued before the trial court that the employee's appellants were not entitled to the regularly scheduled overtime, but then ceded that argument here. Now they say the employees are entitled to the regularly scheduled overtime because that's in line with 501A1 and the other provisions of the regulations that OPM put forth as well as the statute. But now they argue that the receipt of basic pay and standby duty premium pay already compensates for the straight-time portion of overtime. What is the standby premium pay compensating for if it's not compensating for the irregular work, not irregular, there's a lot of terminology here that I'm going to get wrong, but the essentially alternative work schedules of the longer than 40-hour weeks, given that a significant portion of it is standby. So standby duty premium pay compensates for several things including hours worked in excess of eight hours in a day, which our employees are not entitled to as overtime pay by virtue of 501A1. It also compensates for nighttime differentials, weekends, holiday work. So there's various categories of pay that the standby duty premium pay compensates for. But I want to be clear that... And by pay at issue here, we're not talking about night differentials and all that stuff. We're talking about the standby pay you get when you work these whole-day on, whole-day off schedules, right? Correct. And some of that is nighttime. And again, that substitutes for the nighttime differential that the employees would be entitled to. But there's a distinction made here, and we highlight it particularly by this court's decision in Laforte, more aptly the dissent analysis which provides guidance here. Because Laforte dealt with Section 7K employees who also receive standby duty premium pay. So do the other cases cited by Apelli. And that's a key distinction because those employees covered by these other cases, Zimmerling, Abreu, Laforte, they're not entitled to overtime pay for regularly scheduled overtime in excess of 40 hours in a week or 80 hours in a pay period. That's by virtue of 501A5. That explicitly says in the regulations that if you're a Section 7K employee and you receive standby duty premium pay, you're not entitled to regularly scheduled overtime for hours in excess of 40 in a work week or 80 in a pay period if you work a compressed work schedule. Our appellants are not Section 7K employees. So they do not get covered by that. But the Laforte dissent highlights that the premium pay is actually intended for a specific set of time, those hours in excess of the 40-hour basic work week or the 80-hour basic pay period. It kind of differs with the Zimmerling holding. Because in Zimmerling they say premium pay doesn't really apply to any hours. It sort of just covers some unknown set of hours. And Laforte dissent says, no, really it does cover a set number of hours. It's those hours in excess of the 40-hour basic work week or 80-hour... Can I just step back here? I want to make sure I understand the big picture that's going on here. These are all... They're not hourly workers, right? They're all on an annual salary. Correct, yeah. And then in addition to that annual salary, because they work a different work schedule, they get a premium pay to encompass that different work schedule, which in these people's cases is one day on, two days off, which in some weeks gets you to 48 and in some weeks gets you to, I guess, 72 hours of work. Is that right? Yes, depending on the given... Yeah, just how it curls out. And so why doesn't that already contemplate giving them an annual salary plus the premium pay for that schedule? Well, because the regulations and the statute did not provide any authority for that payment to substitute for FLSA overtime. FLSA overtime has to be paid separate and apart from all other forms of payment. Well, I mean, here's the problem. We recognize time and again that Title V and FLSA don't work together very well. And OPM's job and our job is to make sure that they work together so that people aren't paid more or less than they're entitled to. And is it really kind of the gist of your argument going to be that these people are going to get time and a half for hours that are probably indisputably standby hours versus actual hours? And doesn't that conflict with the whole purpose of the standby pay premium pay? Well, Your Honor, respectfully, I don't think it does conflict. And I think that the entitlement created... Let me back up to the factual predicate for that because I want to make sure there's no disagreement about this. In a typical, and I know there can be differences, but in a typical work week, do these people ever actually work more than 40 hours or is the hours that take them in excess always going to be standby hours? Well, Your Honor, to answer that simply, there is no dispute that these are hours of work. Every hour... You're not answering my question. Let's assume that there's a difference between hours actually work performing duties like going out on calls, cleaning their trucks, stocking their trucks, doing paperwork, whatever, and standby hours when their only restriction is they have to be on site, but they can watch TV, they can sleep, they can do whatever. I mean, I think you have to admit that there's a difference between those hours contemplated by the standby premium pay. Well, yes, Your Honor, and I can certainly appreciate the difference between going out and performing. So assuming that there's that distinction, do they ever work more than 40 hours of actual work in a typical work week or is it always that they're working somewhat less than 40 and then they're on standby some things that take them up to the 48? Your Honor, I can answer that best by saying the record is not clear on whether or not there are ever weeks that they actually do work more than 40 hours in that week. If they actually work more than 40 hours in that week, hasn't the government already agreed they would be entitled to overtime if they actually worked in excess of 40 hours? No, Your Honor. The appellee pays the basic pay and standby duty premium pay for all regularly scheduled hours regardless of whether the employees are sitting... But then employees on occasion get actually paid overtime, time and a half under FLSA. So isn't that calculated under the guise that Judge Hughes was referring to? When they actually work more than 40 hours, they actually get overtime. These employees that are otherwise getting premium pay also get overtime for those additional hours of work, right? Well, no, Your Honor. What they do is when they work more than the regularly scheduled tour, so if they work more than 96 hours in the pay period, they call that irregularly scheduled overtime hours. They do get paid time and a half for irregularly scheduled overtime hours. So there's no dispute with regard to that payment. Though they are getting paid a deflated halftime rate because they're not including the additional straight time portion of overtime pay in the total remuneration calculation, which goes into the hourly regular rate for the halftime part. But again, I want to urge this court to... Under the regulatory conditions, work includes being on standby duty, being on the duty status. So there's no issue here that these employees are not entitled to the FLSA overtime pay for the hours in excess of 40 in a work week, but that make up the regularly scheduled tour of duty hours. But all of the requirements that inert to when you're on duty and what you do and what's required of you are different when you're on standby, correct? Your Honor, the record's not clear on that, but they're on standby. So if an emergency call comes, they have to respond. They're providing that benefit to the agency of being on standby and being available to respond at any given moment. Why don't we hear from the government, Your Honor? Okay, I'll reserve the rest of my time. May it please the court. In their reply, the plaintiffs now concede that the government correctly calculates the straight time rate as $19.92 for the sample employee discussed in the brief. From our perspective, that effectively concedes the case because the employees receive that straight time rate for every hour in the regularly scheduled work week. And so in the words of this court's president- Wait, let me, because this case is very, these regulations are very difficult and I've been struggling with these issues for 20 years, not just here, on your side too. But when you say that they receive that 19 whatever for every hour, do you mean in a regularly scheduled 48 hour work week, that that's multiplied by 48 and not 40? Yes, it's multiplied by 48. And one way to think of this is- So again, backing that big picture, they get an annual salary, they get the premium pay, that's divided by a flat hour per year, and then it's re-multiplied by the 48. Is that roughly right? That's one way of thinking. I think the way- Why don't you explain to me what you think is a better way of looking at it? Well, to go to the big picture, I think the best way of looking at it is that these employees work a position that's not a typical federal position. They don't have the typical 40 hour week. Instead, they are regularly scheduled for either a 48 hour week or a 72 hour week. So their basic pay and their annual premium pay, the standby pay, these are annual types of pay that compensate them for that position. And that's supposed to compensate them for all hours worked? At the 100%. In the words of Zummerling- For the straight hours, is your view? That compensates them for the straight hours? Yes. And that's what the court held in Zummerling, where that was a similar situation. It did involve 7K employees, but I'll explain in just a moment why that's not a material distinguishing factor here. In Zummerling, there were plaintiffs that worked- They received- They were standby employees as well. They received basic pay and standby pay, and they had both hours of non-overtime and hours of regularly scheduled overtime. And the court there said that the total remuneration, and that compensates at 100% for all of the two-hour of duty. So then adding the additional one-half the regular rate for each regularly scheduled overtime hour, that accomplishes the full FLSA overtime entitlement. And the same is true here. And the real insight in Zummerling is discussed throughout the opinion, but including- They do cite to numerous Department of Labor regulations that have a similar insight, especially for employees that receive an annual salary. The goal is to figure out what is the typical wage paid for this position and what the position requires. And then that's the wage that you want to make sure the employee is getting time and a half. And so in this case, and in Zummerling, the combination of the basic pay and the standby pay compensates at a typical hourly wage for each hour in the regularly scheduled work week. And we know that if we look at the applicable regulation here. And really this court's decision could begin and end with 5 CFR 551.512B, which has a special definition of the straight time rate for employees that receive annual premium pay. And there it says that the basic pay plus the annual premium- I just want to make sure I'm right. 551.512B. Is that what you said? Yes, correct. Yes. And it's in the second sentence of that provision. For an employee who is authorized annual premium pay, there's this special definition of straight time that is basic pay plus here standby pay divided by all hours for which those pays are intended. I read this and I wish it was as clear as you were assuring us it is, but I don't get it. This is talking about a rate of pay. How does that get us to the conclusion that this compensates for all the hours in excess of 40 hours? Well, we get that from the divisor, the divided by the hours for which the basic pay plus annual premium pay are intended. So because that is used to calculate the rate, it's almost a tautology. It is a tautology that- Is the answer what you said to me earlier, that what this calculates is then multiplied by either the 48 or the, if it's an extraordinary week, the 72? Well, yes. It's divided by the 48, and so I suppose there you could multiply it again by the 48, and that's how you know that the straight time has been paid for all 48 hours. But importantly, in the plaintiff's reply brief at page 13, they concede that the combination, that the proper denominator here, the combination of the basic pay and the standby pay is intended for the full regularly scheduled work week. So that's all 48 hours. So at this point in the case, the parties now agree that the proper number to divide by is the full number of hours in the regularly scheduled work week, and so that's the straight time rate. And so if, in the example we used, for example, the sample employee receives $956 rounding in a regularly scheduled work week for 48 hours. You divide that by 48 and you get 1992, and that's the value that both parties agree is the correct straight time rate. So it might help to make it a little more concrete with these numbers. The sample employee is receiving $19.92 for each hour, and then the additional half of the regular rate completes the compensation. Can I ask you to go back to where your friend started, I think, which is the statutory regime and the distinction he drew between more than eight hours a day and more than 40 hours a week. Can you address that? Yes, and that goes a bit to Zoomerling as well in the 7K issue. In the opening brief, the plaintiffs tried to make this into an issue of, is there FLSA compensation or not? And that's really not the question here. We agree, the government has always agreed, that this is a case where they are entitled to FLSA compensation for hours in excess of 80 in the compressed work schedule. And in a 96-hour pay period, 48-hour work week, that amounts to eight hours in each week of overtime. So I'll turn to the specific regulation that the plaintiffs are discussing, 551.501. So certainly the FLSA normally requires time and a half for hours in excess of eight in a day or 40 in a work week. There are three exceptions that are relevant here. Provision A-1, which applies to standby employees, says that if you work over eight hours in a day, those specific hours may not be overtime so long as, presumably, over 40 in a week still would be. But also applicable here that the plaintiffs don't mention is subsection 6, which refers to for hours that are not overtime hours, as described in the compressed work schedule statute. Those are also not overtime. So there too, for these employees, hours over eight and over 40 are not FLSA overtime unless they are also in excess of the compressed work schedule. So this demonstrates why the 7K exemption is not different. Just like the 7K employees, the plaintiffs here don't receive FLSA in excess of eight hours in a day or FLSA in excess of 40 hours in a week unless it's over the compressed work schedule. But the point is that 551.501 and the 7K issue, these all address the issue of which hours are overtime hours. That's not the issue in this case. So that's why it's really a side issue that we don't want to focus on. Just like in Zumerling, Laforte, and Abreu, the issue is we know these hours are overtime hours. How do we properly compensate for them under the FLSA? And OPM says that the entitlement is straight time plus half of the regular rate. And the applicable regulation... And that's the 551 regulation. That's the 551.512, exactly. Well, the conclusion in A of 512 is that you're talking about an employee's overtime entitlement. And the overtime that you refer to at the end of the sentence, under your reading, those are different. Right? I'm sorry, Your Honor. Employee's overtime entitlement under this subpart includes the straight rate plus one-half times of the pay times of all overtime hours worked. So that's something different than the overtime entitlement that is referred to at the beginning of the sentence. Right? Well, if I understand the question, A1 is referring to the straight time rate and A2 is referring to the regular rate. Here, they're the same. For example, the straight time rate is 19.92 and the regular rate is also 19.92. And that may be often the case. It depends on the specific types of pay at issue. But... Well, what's confusing isn't the use of the phrase, the employee's overtime entitlement includes, and then you say, straight time rate of pay times all overtime hours worked. And they do receive that because if you, like I said... But then it says later, the overtime hours worked is then used in two to say you're going to get one-half times the hourly regular rate of pay. Maybe it's just me that's confused by this. Are you referring to the fact that it says... It looks like all... It's a very confusing regulation. Yes. OPM might take a look at making this clearer. Yes, but there's no dispute that this formula... Honestly, if you read A1 and 2 without looking at B, which I understand you think B somehow further defines and qualifies this for these special work schedules, it seems to suggest that they would get the straight time rate of pay for the additional eight hours and a half also for the additional eight hours. They do receive the additional half. Well, they don't receive the additional one-and-a-half. Right. But if you ignore Part B, it seems like A1 and 2 would get you the one-and-a-half. And I'll explain why that's not so. Because what they're asking for is an additional $19.92 on top of the $19.92 they're already getting. So that would be a double... And that's because you paid them the $19.92 for the 48 hours, not just for 40 hours. Yes, precisely. And that's why the 48 is the divisor here in the regulation. That comes from how OPM interprets B? That comes from OPM's definition of B, and it comes from even the plaintiffs themselves have conceded that the 48 hours is the proper number to divide by. And that's how we get the $19.92. But if they're essentially saying that they... Can I take you back to my other kind of more, I think, practical questions about... I get all these calculations and stuff, but I do worry that it seems like the point of these are... They never actually perform duties even close to the 40 hours that a lot of this is standby. And that's contemplated by the regulations that talk about which percentage of premium pay they get has different things, depending upon how many of them are on standby and not. Is there any allegation here to your knowledge that these people are working more than 40 hours in a pay period? No, I'm not aware of any. And you're exactly right that they're... And by working, I mean... In Title V, meaning. Not standby hours, yes. Yes. And it might help the court in the Title V regulations at 550.143E, it defines standby as saying, these are hours that the employee may have to be on location, but they can be sleeping, eating, listening to radio, doing whatever they want. They don't have to be doing actual work. And in the FLSA understanding, that's a different regulation. Which is presumably why they get a premium pay that's not equivalent to the full FLSA one and a half. Exactly, exactly. And that's the whole difficulty that OPM was faced with, is that they're faced with a scheme, a longstanding scheme in Title V, that compensates longer than ordinary work weeks, i.e. over 40. And in Title V side, using this special type of premium pay, and they have to reconcile that with the FLSA understanding that if you're required to be on site, that's effectively an hour of work for the FLSA. And we agree that these are hours of work for the FLSA. But the question is, in the understanding of Zummerling, what really is the typical hourly rate paid? And the typical hourly rate is the basic pay and the standby pay, divided by all of the regularly scheduled hours in the work week. And I'd like to briefly address the Laforte argument that's made in the plaintiff's reply brief. And that's based primarily on the statutory provision, 5 U.S.C. 5504, which is cited at page 7 of the reply brief. That's actually the wrong version of the statute that's cited there. The statute has materially changed since the version that was at issue in Laforte. In Laforte, there actually was a sentence in the statute saying, and I paraphrase, that the basic pay is intended to compensate for only 40 hours in the work week, 52 hours in the year. And that language has been deleted. And the 5504 now is merely a tool of conversion to convert an annual rate to an hourly or monthly rate. So the argument was rejected in Laforte. And it should, again, be rejected here with an even weaker statutory basis. Wait, the language you're saying has changed to 5504B? Yes. Okay. And that's what was referred, your friend referred to the dissent in that case. Yes. And that's what the dissent was talking about? Yes. And even under that stronger language, the majority still rejected the argument and sustained OPM's methodology. And just as the Court of Federal Claims did here, we respectfully request that the Court sustain the OPM's methodology again in this case. Thank you. Thank you, Your Honors. There's no deference, though, to OPM here. And if you follow OPM's regulations, the plain reading, you would have to find in favor of appellants. 512 sets up a calculation for the straight time rate of pay in B and then instructs that you multiply that straight time rate of pay times all overtime hours in A1, 512A1. Apelli does not do that. Apelli does not multiply the straight time rate of pay. Because I'm still confused. This 19 hourly rate, this comes from combining the annual salary and the 10% premium pay and doing the math, and then over the 48-hour work week, not the 40-hour work week. So you're getting that $19 for all 48 hours. Is that right? Apelli's method of calculation dilutes the basic pay to cover all 48 hours, when in actuality the statute only allows the basic pay to compensate for 14. I think the annual salary plus the premium pay is intended to compensate for this special work schedule. And so it covers all 48 hours. I'm not talking – well, I'm going to have to say that. You get that for 48 hours. Correct, Your Honor. Because you get an annual salary that's divided out over each work week. And then in recognition of the fact that you're on standby and that you work these 48-hour work weeks, or sometimes more, you get the premium pay. Correct, Your Honor. But the distinction is that while those are intended for the 96 hours or 48-hour week, in the calculation of the straight-time rate of pay in 512B, the Laforte dissent advises that the basic pay only actually compensates you for 40 hours. And the standby duty premium pay does not substitute for FLSA overtime pay. So again, even though they're intended for that in that calculation, you still have to take the affirmative step of multiplying that rate by the regularly scheduled overtime hours. This Court has never approved the method of pay that Apelli supports. The Zumerling case, the Abreu case, because they're Section 7K and receive standby duty premium pay, they're not entitled to the FLSA overtime for regularly scheduled overtime. That's why Laforte held what it did. Laforte never rejected the argument that appellants are making here. Laforte never rejected, per se, the dicta that the dissent advises in Laforte, because the dissent was addressing really appellants, non-Section 7K employees, who receive standby duty premium pay. I see I'm out of time. Thank you. Thank you, Your Honor. The case is submitted. That concludes our proceedings for this morning. All rise.